IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FRANK MUNIZ,

    Plaintiff,

vs.                                              Civil No.03-30 MCA /RHS

BEN CAVASOS, et al.,

    Defendants.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

    1. This matter comes before the Court upon Defendant's Motion to Dismiss, filed December 22, 2003. [Doc. No. 23]. Plaintiff, Frank Muniz, an inmate proceeding *pro se* and *in forma pauperis,* brings this civil rights action pursuant to 42 U.S.C. §1983, alleging that Plaintiff was wrongly accused by Defendant Cavasos, an employee of the Corrections Department at the Central New Mexico Correctional Facility ("CNMCF"), of bringing contraband into the prison. Plaintiff was ultimately acquitted of that charge. Mr. Muniz also contends that corrections officials improperly placed and kept him in level VI disciplinary lockup rather than the general prison population in retaliation for his acquittal on the contraband charge and that they placed false information in his file in order to justify his custody classification level. He seeks damages and equitable relief.

    2. The Court dismissed Defendants New Mexico Corrections Department and the State of New Mexico as parties to this action on January 23, 2003. [Doc. No. 5]. Plaintiff filed his Amended Complaint to Name Additional Defendants on October 27, 2003. [Doc. No. 15]. The

1

Amended Complaint includes Gary Johnson, Former New Mexico Governor; Robert Perry, Former New Mexico Corrections Secretary; Ronald Lytle, Warden, Central New Mexico Correctional Facility; Brian Culp, Associate Warden, Central New Mexico Correctional Facility; Carlos Toers-Bijns, Associate Warden, Central New Mexico Correctional Facility; White, Major, Central New Mexico Correctional Facility; Victor Vallejos, Lieutenant, Central New Mexico Correctional Facility; Pita Fincher, Lieutenant, Central New Mexico Correctional Facility; Jerry Martinez, Lieutenant, Central New Mexico Correctional Facility; Larry Martinez, Lieutenant, Central New Mexico Correctional Facility; Rupert, Captain, Central New Mexico Correctional Facility; Central New Mexico Receiving and Diagnostic Center-RDC, Unknown named authorized agent; Louis Sanchez, Classification Officer, Central New Mexico Correctional Facility; Ben-Como, Caseworker, Central New Mexico Correctional Facility; Elmer Bustos, New Mexico Director of Adult Prisons; New Mexico Adult Prisons, Central Bureau of Classification-CBC, Unknown named authorized agents and James Dickie, Former New Mexico State Police Officer as defendants in this case. Only Defendant Cavasos has been served with the Amended Complaint.

  3. Plaintiff's Amended Complaint seeks actual and punitive damages against the defendants for false imprisonment, for malicious prosecution, for "negligently causing injury to Plaintiff without regard to plaintiff's rights and freedoms," and for abusing their authority and "using it as a tool of retaliation." (Amended Complaint at 20). Plaintiff also seeks injunctive relief directing prison officials to correct his custody classification and release to him to the general prison population. Plaintiff admits that he is presently classified at custody level three and now resides in the general prison population.

4. According to Mr. Muniz, on September 26, 1999, he gave his girlfriend, Debbie Sanchez, a ride to CNMCF to visit her brother in his employer's truck. He parked across the road from the prison and exited the vehicle. He was not wearing a shirt due to the heat. Defendant Cavazos, the traffic control officer at the CNMCF entrance, observed Plaintiff's tattoos and the knife sheathed to his belt. Officer Cavazos told Ms. Sanchez that Plaintiff and Ms. Sanchez would have to park on the prison grounds in order for Ms. Sanchez to be admitted to the prison to visit her brother. Plaintiff claims that Defendant Cavazos made that statement in order "to lure Plaintiff onto the prison grounds to bust [Plaintiff] to enhance [Cavazos'] chances for his applied for promotion." Mr. Muniz then removed the knife from his belt to place it in the truck's toolbox. When Plaintiff opened the toolbox, he found a gun. He took the gun and the knife about 150 yards from the prison entrance and left them there. Mr. Muniz and Ms. Sanchez then drove onto the prison grounds where the truck was searched by Defendant Cavazos. When no weapons were found, Defendant Cavazos called for assistance and directed the other officers to search across the road. The weapons were located and Defendant James Dickie, a state police officer, was called to the scene. (Complaint at 1-4).

5. Plaintiff was handcuffed and seated in the back of Defendant Dickie's state police car. Defendant Rupert, a CNMCF correctional officer, allegedly told Defendant Dickie that "we're lucky we got him because had he managed to get that gun into one of his gang friends, a lot of fellow officers could have died." (Amended Complaint at 16).

6. Plaintiff was transported to the Los Lunas State Police Office ["LLSPO"]. At the LLSPO, Defendant Dickie handcuffed Plaintiff to a chair and went out of the room to get Plaintiff

3

a Coke. Officer Dickie left his weapon on his desk   Plaintiff obtained the weapon and attempted to escape custody. (Amended Complaint at 17-19).

7. Plaintiff was confined at CNMCF and ultimately acquitted of the contraband charge. He was convicted of other charges, including kidnaping, attempted escape from and disarming of a police officer and assault on a police officer. (Amended Complaint at 14). Plaintiff was placed in level VI housing status, involuntary administrative segregation, and remained at that custody level for 27 months before he was released to the general prison population.

8. Plaintiff claims that Officer Cavasos maliciously caused him to be prosecuted for bringing contraband into the prison, that Defendant Rupert "poisoned ...James Dickie's mind, " and that Defendant Dickie "knowingly and willingly left a .380 caliber firearm and magazine within reach of [Plaintiff], placing himself and Plaintiff in danger... causing Plaintiff to be shot and traumatized." (Amended Complaint at 17-19). He alleges that employees at the CNMCF Receiving and Diagnostic Center ("RDC") mistakenly placed him in involuntary administrative segregation (level VI ) based upon evidence that was fabricated in a general conspiracy  against Plaintiff.  Plaintiff also claims that several defendants failed to adequately train or supervise their subordinates. (Amended Complaint at 8-10).

9. Defendant Ben Cavasos,  the only defendant who has been served with the Amended Complaint,  asks the Court to dismiss this case because Mr. Muniz  failed to exhaust his administrative remedies and  failed to state a claim upon which relief can be granted under Rule 12(b)(6).  This matter is additionally before the Court *sua sponte* to review Plaintiff's civil rights complaint with respect to the unserved defendants pursuant to 28 U.S.C. § 1915(e)(2) and

4

Fed.R.Civ.P. 12(b)(6). The United States Magistrate Judge respectfully recommends that this case be dismissed in its entirety for failure to state a claim.

**Standard of Review**

10. In ruling on a motion to dismiss, a court presumes that all of a plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff. Hall v. Bellmon, 935 F.2d 1106, 1109 ( 10th Cir. 1991)(citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Courts may not dismiss a lawsuit for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him or her to recovery. Conley v. Gibson, 355 U.S. 41, 45- 46 (1957). Complaints drawn by pro se litigants, such as the Amended Complaint now before the Court, are held to less stringent pleading standards than complaints drafted by counsel. Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 294 (1976). Nonetheless, a pro se complaint may be dismissed if it clearly fails to state a legally cognizable claim. Id. "The court should not assume the role of advocate [for a pro se litigant], and should dismiss claims which are supported only by vague and conclusory allegations." Northington v. Jackson, 973 F.2d 1518, 1520-21 (10th Cir. 1992)(citing Hall, 935 F.2d at 1110).

11. The Court has the discretion to dismiss an in forma pauperis complaint sua sponte under 28 U.S.C. § 1915(e)(2) if "the action ... is frivolous or malicious; [or] fails to state a claim upon which relief may be granted." The Court may also dismiss a complaint sua sponte under Fed.R.Civ.P. 12(b)(6) for failure to state a claim if "it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." Hall v. Bellmon, 935 F.2d 1106, 1109 (10th Cir. 1991) (quoting McKinney v. Oklahoma Dep't of Human Services, 925 F.2d 363, 365 (10th Cir. 1991)). In reviewing Plaintiff's pro se

complaint, the Court applies the same legal standards applicable to pleadings drafted by counsel, but is mindful that the complaint must be liberally construed. Northington v. Jackson, 973 F.2d 1518, 1520-21 (10th Cir. 1992).

12. "*Sua sponte* dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts." Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir. 2001). The Court will therefore evaluate the sufficiency of Plaintiff's claims against each of the unserved defendants to determine if *sua sponte* dismissal of those claims is appropriate.

**Claims Against Gary Johnson**, **Former New Mexico Governor**

13. To succeed on a complaint under § 1983, Plaintiff must allege some personal involvement by Defendants in the constitutional violation. Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996). A civil rights action against a state official may not be based solely on a theory of respondeat superior liability for the actions of workers supervised by the official. Id.

14. Plaintiff alleges no personal involvement by Defendant Johnson in his case. Instead, Plaintiff names Defendant Johnson solely in his former capacity as Governor of New Mexico, because Defendant Johnson, as governor, was responsible for the administration of the New Mexico Department of Corrections.

15. Plaintiff has not shown an affirmative link between constitutional deprivation and Defendant Johnson's personal participation, exercise of control or direction, or failure to supervise, See Butler v. City of Norman, 992 F.2d 1053, 1055 (10th Cir. 1993). Plaintiff could not prevail on the facts alleged and allowing Plaintiff an opportunity to amend his complaint against Defendant Johnson would be futile. Accordingly, the United States Magistrate Judge

6

recommends that Plaintiff's claims against Defendant Johnson be dismissed *sua sponte* for failure to state a claim upon which relief may be granted. Ledbetter v.City of Topeka, Kansas, 318 F.3d 1183, 1187 (10th Cir. 2003).

**Claims Against Robert Perry**, **Former New Mexico Corrections Secretary**; **Ronald Lytle**, **Warden**, **Central New Mexico Correctional Facility**; **Brian Culp, Associate Warden**, **Central New Mexico Correctional Facility**; **Carlos Toers-Bijns**, **Associate Warden**, **Central New Mexico Correctional Facility**; **White**, **Major**, **Central New Mexico Correctional Facility**

16. Plaintiff alleges that the above listed defendants failed to properly train their subordinates to refrain from "planting evidence and set[t]ing up citizens by any means possible." Plaintiff alleges these supervisory defendants knew correctional officers at CNMCF were engaging in "illicit means of busting citizens at CNMCF's traffic control" and were deliberately indifferent to the misconduct of their subordinates, failed to take reasonable steps to end the "illicit" practice, and failed to properly train officers to deal with prison visitors. He specifically claims that these defendants are liable for damages because they failed to train correctional officers "not to use illicit means for selfish gains such as ...lying to lure Plaintiff on to prison grounds and lying that Plaintiff was introducing weapons to the prison for the motive of get[t]ing a promotion." (Amended Complaint at 7-8).

17. A supervisor may be held liable in his individual capacity where there is essentially a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable. Meade v. Grubbs, 841 F. 2d 1512, 1528 (10th Cir. 1988). A supervisor is not liable under §1983 unless an affirmative link exists between the [constitutional] deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise. Id.

7

18. Plaintiff's conclusory allegations of supervisor liability are unsupported by any assertions of fact and are insufficient to state a claim. See Wiggins v. New Mexico State Supreme Court Clerk, 664 F. 2d 812, 816 (10th Cir. 1981), cert. denied, 459 U. S. 840 (1982). Accordingly, the United States Magistrate Judge recommends that Plaintiff's claims against Robert Perry, Ronald Lytle, Brian Culp, Carlos Toers-Bijns, and Major White be DISMISSED sua sponte for failure to state a claim upon which relief may be granted.

**Claims Against Defendants Victor Vallejos**, **Lieutenant**, **Central New Mexico Correctional Facility**; **Pita Fincher, Lieutenant, Central New Mexico Correctional Facility**; **Jerry Martinez**, **Lieutenant, Central New Mexico Correctional Facility; Larry Martinez**, **Lieutenant, Central New Mexico Correctional Facility; an Unknown Central New Mexico Receiving and Diagnostic Center-RDC Authorized Agent**; **Louis Sanchez, Classification Officer, Central New Mexico Correctional Facility; Ms. Ben-Como, Caseworker, Central New Mexico Correctional Facility; Elmer Bustos, New Mexico Director of Adult Prisons**; **New Mexico Adult Prisons**, **and Unknown Named Authorized Agents of the Central Bureau of Classification**.

19. Plaintiff contends that Defendants Victor Vallejos, Pita Fincher, Jerry Martinez, Larry Martinez, an unknown Central New Mexico Receiving and Diagnostic Center-RDC authorized agent; Louis Sanchez, Ms. Ben-Como, Elmer Bustos, and unknown authorized agents of the Central Bureau of Classification conspired to remove him from the general prison population in violation of the constitutional prohibition against cruel and unusual punishment and of the due process and equal protection clauses of the constitution. Plaintiff alleges that these defendants violated his Eighth and Fourteenth Amendment rights by placing him in administrative segregation. Mr. Muniz also argues that the custody classification system unconstitutionally discriminates against inmates who have been accused of an escape or escape attempt. (Amended Complaint at 15).

A. Cruel and Unusual Punishment

20. Assuming that the conditions of confinement do not involve unnecessary infliction of pain, a prison's placement of an inmate in segregation does not constitute cruel and unusual punishment. Bailey v. Shillinger, 828 F.2d 651, 653 (10th Cir.1987). Prison administrators must be accorded broad flexibility in matters of internal security, Sandin v. Conner, 515 U.S. 472, 482-83, 115 S.Ct. 2293, 2299-2300, 132 L.Ed.2d 418 (1995), and absent a clear abuse of discretion, placement decisions are not subject to judicial review. Marchesani v. McCune, 531 F.2d 459, 462 (10th Cir.1976).

21. Plaintiff appears to argue that his conditions of confinement during his administrative segregation were unconstitutional. To prevail on a conditions of confinement claim . . . an inmate must establish that (1) the condition complained of is sufficiently serious to implicate constitutional protection, and (2) prison officials acted with deliberate indifference to inmate health or safety. Despain v. Uphoff, 264 F. 3d 965, 971 (10th Cir. 2001). Conditions prisoners face by virtue of their incarceration can be restrictive and even harsh without running afoul of the Eighth Amendment. Rhodes v. Chapman, 452 U. S. 337, 347, 101 S. Ct. 2392, 2402 (1981); Despain, 264 F. 2d at 973. "The Constitution does not mandate comfortable prisons . . . and only those deprivations denying the minimal civilized measure of life's necessities . . . are sufficiently grave to form the basis of an Eight Amendment violation." Wilson v. Seiter, 501 U. S. 294, 298, 111 S. Ct. 2321, 2325 (1991) (quoting Rhodes, 452 U. S. at 347, 349). The Court defined life's necessities as " identifiable human needs such as food, clothing, shelter, medical care, sanitation and reasonable measures by prison officials to ensure inmate safety." Wilson, 501 U. S. at 304-05.

22. Although Plaintiff's Amended Complaint describes the restrictions imposed by his custody classification, he fails to allege that his administrative segregation resulted in deprivation of "life's necessities" as identified by the Supreme Court. Presuming that all of a plaintiff's factual allegations are true and construing them in the light most favorable to Plaintiff, the Court finds that the Amended Complaint fails to state a constitutional violation based on Plaintiff's conditions of confinement.

B. Due Process

23. Plaintiff also contends that his administrative segregation confinement violated his Fourteenth Amendment rights. He argues that he was denied due process because the defendants failed to properly apply the relevant state rules in determining his custody classification.

24. Inmates are not entitled to a particular degree of liberty in prison, and ordinarily a change in an inmate's prison classification to administrative segregation does not deprive the inmate of liberty. Templeman v. Gunter, 16 F.3d 367, 369 (10th Cir.1994). Moreover, there is no right independently protected under the Due Process Clause to remain in the general prison population. Hewitt v,. Helms, 459 U.S. 460, 468, 103 S.Ct. 864, 869-70, 74 L.Ed.2d 675 (1983). A decision by prison officials to place an inmate in administrative segregation, therefore, does not implicate the Due Process Clause unless the confinement presents "the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Sandin, 515 U.S. at 484, 115 S.Ct. at 2300. Mr. Muniz has failed to show that his segregated confinement was such a deprivation.

C. Equal Protection

25. An individual's Equal Protection rights are implicated when the government treats him differently than it treats similarly situated individuals. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). If an individual cannot establish that he is a member of a protected class or that he has been denied a fundamental right, the government's conduct will be upheld as long as its actions bear a rational relationship to a legitimate state purpose. Penrod v. Zavaras, 94 F.3d 1399, 1406 (10th Cir.1996).

26. Plaintiff does not allege that prison officials denied him a fundamental right or that officials treated him differently based on a protected classification. His claim, therefore, is subject only to a rational basis review. Id.

27. Prison officials must be given broad flexibility in managing penal facilities. Sandin, 515 U.S. at 482-83, 115 S.Ct. at 2299-2300. Consideration of a history of attempted escape when determining an inmate's custody classification is rationally related to the legitimate state purpose of ensuring inmate safety and institutional order. Because Plaintiff has advanced no evidence of an improper discriminatory motive on the part of the defendants and any disparate treatment he has received is rationally related to a legitimate governmental purpose, the Court recommends that Plaintiff's Equal Protection claim be dismissed. See Riddle v. Mondragon, 83 F. 3d 1197, 1207 (10th Cir. 1996).

D.  Conspiracy Issues

28. A court must proceed with caution when considering the pre-trial dismissal of conspiracy allegations in civil rights proceedings because of the difficult nature of the proof involved. Fisher v. Shamburg, 624 F.2d 156, 162 (10th Cir. 1980). At the same time, however, "mere conclusory allegations with no supporting factual averments are insufficient; the pleadings

must specifically present facts tending to show agreement and concerted action." <u>Sooner Products Co. v. McBride</u>, 708 F.2d 510, 512 (10th Cir. 1983). A "court should not assume the role of advocate, and should dismiss claims which are supported only by vague and conclusory allegations." <u>Northington</u>, 973 F.2d at 1520-21 (citing <u>Hall</u>, 935 F.2d at 1110).

29. In reviewing Plaintiff's complaints, the Court has kept in mind the liberal construction of pro se pleadings dictated by the Supreme Court in <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972). Nonetheless, the Court finds that Plaintiff's allegations against these defendants do not "specifically present facts tending to show agreement and concerted action," as minimally required to support a complaint for conspiracy. <u>See Sooner Products Co.</u>, 708 F.2d at 512.

30. Having determined that Plaintiff's administrative segregation did not constitute cruel and unusual punishment, that his custody classification does not implicate a protected liberty interest, that his equal protection challenge is without merit and that he has failed to support his claim that these defendants conspired to violate his constitutional rights, the United States Magistrate Judge recommends that the claims against Defendants Victor Vallejos, Pita Fincher, Jerry Martinez, Larry Martinez, an unknown Central New Mexico Receiving and Diagnostic Center-RDC authorized agent; Louis Sanchez, Ms. Ben-Como, Elmer Bustos, and unknown named authorized agents of the Central Bureau of Classification be dismissed with prejudice for failure to state a claim.

**Claims Against Defendant Rupert**

31. Plaintiff alleges that Defendant Rupert made statements to Officer Dickie which "poisoned his mind [against Plaintiff]." This allegation does not support a claim under § 1983 or

New Mexico law. The Court recommends that all claims against Defendant Rupert be dismissed with prejudice.

**Claims Against Defendant James Dickie**

32. Mr. Muniz alleges that Defendant Dickie violated police protocol and placed Plaintiff in danger by leaving his weapon in the same room as Plaintiff who was handcuffed to a chair. He contends that Officer Dickie should have known that it was unsafe to leave Plaintiff alone because Officer Dickie had previously reviewed Plaintiff's NCIC Rap Sheet which listed convictions for Armed Robbery (with a firearm), Involuntary Manslaughter (by firearm), and Escape from Jail. Plaintiff maintains that Defendant Dickie's alleged failure to exercise his duty of care to Plaintiff was responsible for Plaintiff's seizure of the officer's gun and attempt to escape.

33. The Court construes this claim as alleging negligence on the part of the police officer which is not cognizable as a cause of action either under § 1983 or as a state claim under the Tort Claims Act. See Davidson v. Cannon, 474 U. S. 344, 106 S. Ct. 668 (1986) (merely negligent acts or omissions will not support a cause of action under § 1983); Blea v. City of Expanola, 117 N. M. 217, 219, 870 P.2d 755, 757(Ct. App. 1994) (simple negligence in the performance of a law enforcement officer's duty does not amount to commission of one of the torts listed in the Act). Accordingly, the Court recommends that all claims against Officer Dickie be dismissed with prejudice.

**Motion to Dismiss by Defendant Cavasos**

34. Defendant Cavasos moves the Court to dismiss Plaintiff's complaint on the grounds that Plaintiff has failed to exhaust administrative remedies and that Plaintiff failed to serve him with Plaintiff's Response to the Court's Order instructing Plaintiff to show cause why his

13

complaint should not be dismissed for failure to exhaust administrative remedies.  Alternatively, Defendant Cavasos argues that the claims against him should be dismissed for failure to state a claim.

35. Under 42 U.S.C. § 1997e(a) of the Prisoner Litigation Reform Act of 1995 ("PLRA"), as construed in Booth v. Churner, et al, 531 U.S. 956 (2001), a prison inmate is required to complete the prison administrative process before suing over prison conditions, regardless of whether a plaintiff is suing for injunctive relief or money damages.[1]  Plaintiff's appeal of his classification status was initially denied as untimely. (Defendant's Motion to Dismiss, Exhibit A).

36. Plaintiff contends that he met the requirement to exhaust under §1997e(a) because he was allowed to file a special appeal which resulted in a decision against Plaintiff on the merits.  According to Plaintiff, the special appeal exhausted his administrative remedies.

37. The Court lacks sufficient information to resolve the factual dispute with respect to the administrative appeal process available to Plaintiff.  The Court, therefore, recommends that Defendant's motion to dismiss for failure to exhaust administrative remedies be denied.  Although the *pro se* Plaintiff was obliged to serve Defendant Cavasos with his Response to the Court's Order and failed to do so, the Court also declines to recommend dismissal of Plaintiff's case for that reason.  The United States Magistrate Judge, however, finds that the motion to dismiss for

---

[1] Section 1997e(a) provides that "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

14

failure to state a claim is well taken and recommends dismissal of Plaintiff's claims against Defendant Cavasos pursuant to Rule 12(b)(6).

38.  Plaintiff alleges that had Defendant Cavasos not lied about the policy regarding walk-in visitors, Plaintiff would not have had to hide two knives and a gun outside the prison.  Plaintiff contends that Defendant Cavasos was motivated by the thought that "if I can get an ex-con with a knife to come on to prison grounds, I can bust him and at the same time get promoted." (Complaint at 6).  Mr. Muniz claims that the conduct of Defendant Cavasos violated his rights to be free from government employees abusing authority, false imprisonment and malicious prosecution.

39.  According to Plaintiff, Defendant Cavasos observed Plaintiff parked across from the entrance to CNMCF. Mr. Muniz was wearing no shirt and Defendant Cavasos was able to observe Plaintiff's prison tattoos and a sheathed hunting knife on his belt.  When Plaintiff was informed that he would have to drive onto the prison grounds, he attempted to conceal the weapons outside the correctional facility.   The Court does not find that concerns about officer and institutional safety were unwarranted in that situation.

40.  Plaintiff was acquitted of the charge of bringing contraband into the prison.  He was convicted of additional crimes against Officer Dickie and is presently incarcerated on those charges.  Because Plaintiff appears to be lawfully incarcerated as a consequence of criminal charges unrelated to the actions of Defendant Cavasos, his argument that misrepresentations by Defendant Cavasos caused him to be unlawfully imprisoned is without merit.  To the extent that Plaintiff complains that his confinement is illegal and his convictions resulting from the incident with Officer Dickie are invalid, that claim is not cognizable as a civil rights actions and should

15

have been brought in a habeas corpus petition, Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994).

41. Plaintiff also contends that Defendant Cavasos maliciously caused him to be prosecuted for the contraband charges. He claims that Defendant Cavasos "created ...an elaborate scheme ...caus[ing] a domino effect which casted(sic) Plaintiff as an unwilling victim togethere (sic)with anothere(sic) unwilling victim, state police officer James Dickie." (Complaint at 7).

42. A malicious prosecution claim is cognizable under § 1983. Taylor v. Meacham, 82 F. 3d 1556, 1560 ( 10th Cir. 1996). The analysis of a § 1983 malicious prosecution claim looks to state law for a starting point, but proceeds to the ultimate question of whether the plaintiff has proven a Fourth Amendment violation. Pierce v. Gilchrist, 359 F. 3d 1279, (10th Cir. 2004); Taylor, 82 F. 3d at 1561. Under the common law of New Mexico the elements for the tort of malicious prosecution are:(1) the initiation of judicial proceedings against the plaintiff by the defendant; (2) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (3) a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and (4) damages. DeVaney v. Thriftway Marketing Corp., 124 N. M. 512, 953 P. 2d 277 (1998).

43. Even if Officer Cavasos lied to Plaintiff about the legality of parking his vehicle across from the prison, Plaintiff has not established that Defendant Cavasos violated Plaintiff's Fourth Amendment rights or used the judicial process to accomplish an illegitimate end. Defendant Cavasos observed Plaintiff engaging in suspicious behavior just outside the prison. Reporting those observations to other prison personnel was appropriate, given the perceived threat to officer

16

and inmate safety. In the absence of any evidence to the contrary, the Court will not infer other improper motives to Defendant Cavasos.

44. Plaintiff's allegation that Defendant Cavasos was responsible for Plaintiff's choice to conceal his weapons rather than leaving the area is no more logical than his conclusion that Officer Dickie was responsible for Plaintiff's choice to attempt to escape custody. Although Plaintiff's acquittal on the weapons charges may be relevant to his state claim of malicious prosecution, that fact alone is not enough to withstand a motion to dismiss this claim. The allegations contained in the Complaint and in the Amended Complaint, accepted as true, do not state a violation of Plaintiff's Fourth Amendment rights and the Court therefore recommends that this claim be dismissed.

**Injunctive Relief**

45. As discussed, supra, the Due Process Clause does not entitle an inmate to a particular custody classification. Plaintiff is currently in the general prison population and does not argue that his present custody classification imposes a typical and significant hardship in relation to the ordinary incidents of prison life. See Sandin v. Conner, 115 S.Ct. 2293, 2300 (1995). Accordingly, the Court finds that the Plaintiff has failed to state a constitutional claim which would require a change in his classification. The Court recommends that Plaintiff's request for a grant of injunctive relief to correct his custody classification be denied as moot.

### Recommended Disposition

The United States Magistrate Judge recommends that Defendant's Motion to Dismiss be granted and that all §1983 claims against Defendant Cavasos be dismissed with prejudice. The Court also recommends dismissing with prejudice all §1983 claims against the unserved

defendants *sua sponte* for failure to state a claim.  To the extent that Plaintiff may be attempting to allege claims based on state law, the Court recommends that supplemental jurisdiction over the state law claims be declined.   28 U. S. C. § 1367( c)( 3); <u>Bateman v. City of West Bountiful</u>, 89 F. 3d 704, 709 n. 5 (10th Cir. 1996).  Finally, the Court recommends that the injunctive relief sought by Plaintiff be denied as moot.

      Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C ). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may file written objections to such proposed findings and recommendations. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

                                                  */s/ Robert Hayes Scott*
                                              UNITED STATES MAGISTRATE JUDGE